IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | Criminal Action No. 7:07-cr-84 |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | By: Elizabeth K. Dillon |
| GORDON RAY JONES | ) | United States District Judge |

**MEMORANDUM OPINION**

Pending before the court is Gordon Ray Jones's motion to reduce his sentence pursuant to Section 404(b) of the First Step Act of 2018, filed by and through counsel. (Dkt. No. 421.) The motion is fairly brief and asks the court to reduce his sentence from 172 months to 100 months. He contends that his guideline range under the First Step Act has changed because, although he was designated a career offender when he was sentenced in 2008, that designation is no longer appropriate in light of intervening law. Specifically, he posits that the two offenses that the sentencing court relied upon to designate him a career offender no longer qualify as career offender predicates after *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011). Without the career offender designation, he calculates his guideline range as 151 to 188 months, and requests a variance below the guideline range proportional to the one he received at sentencing.

The United States has filed a response in which it contends that Jones is not eligible to be considered for a reduction in sentence under the First Step Act. (Dkt. No. 429.) In particular, it contends that, in selecting the proper subsection of 21 U.S.C. § 841(b) applicable to his offense, the court should use the higher drug amounts for which the sentencing court held Jones responsible, rather than the amounts charged in the indictment. If the court were to do so, the argument continues, then Jones's statutory penalties have not changed and he is not eligible for

relief. Even if he were eligible, moreover, the United States urges the court to exercise its discretion to deny relief. In support, the United States notes the significant drug weight involved in the offense and further notes that Jones's guideline range remains unchanged. (*Id.*)

Neither party has requested a hearing, and Jones specifically states that he "does not seek a resentencing hearing." (Mot. Reduce Sent. 3.) For the reasons discussed below, the court will deny in part and grant in part the defendant's motion to reduce sentence.

## I. BACKGROUND

Jones and a number of co-defendants were charged in a multi-count indictment. (Dkt. No. 3.) Jones ultimately pled guilty only to Count One, which charged him with conspiracy to distribute and to possess with intent to distribute a mixture or substance containing more than fifty (50) grams of cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A). As part of the plea agreement, the government agreed to dismiss the remaining charges against him. At the time, the statutory penalties for an offense involving 50 grams or more of cocaine base were set forth in § 841(b)(1)(A). Because Jones was subject to an enhancement under 21 U.S.C. § 851 (Dkt. No. 114), the offense carried a mandatory minimum sentence of twenty years and a maximum sentence of life. (Presentence Investigation Report (PSR) ¶¶ 3, 84, Dkt. No. 422.)[1] The § 851 notice also triggered a ten-year mandatory minimum term of supervised release. (*Id.* ¶ 87.)

At sentencing, the court determined that Jones should be held responsible for 4.5 kilograms of cocaine base, resulting in a base offense level of 38. The court determined that he was entitled to a three-level reduction for acceptance of responsibility. Accordingly, his total offense level was 35. Based on two prior offenses, he was a career offender. But the career offender guideline also resulted in the same total offense level, 35. (PSR ¶¶ 29–39.)

---

[1] The sentencing court adopted the PSR without changes.

He had a total criminal history score of 19, placing him in criminal history category VI, even before application of the career offender guideline. (*Id.* ¶¶ 56–57.) His resulting guideline range was 292 to 365 months. (*Id.* ¶ 85.) The court imposed a below-guideline sentence of 192 months, to be followed by a ten-year term of supervised release. (Dkt. No. 177.)

Jones did not appeal, but he filed a motion pursuant to 28 U.S.C. § 2255, which was denied. He also filed several motions to reduce his sentence. One of these was granted. Specifically, on October 18, 2011, the court reduced his sentence pursuant to U.S. Sentencing Guideline Amendment 750. In doing so, the court applied the career offender guideline, which was required because that guideline resulted in a higher total offense level than using the drug weight guidelines. *See* U.S.S.G. § 4B1.1. Thus, his resulting guideline range was 262 to 327 months. The court imposed a proportionally below-guideline sentence of 172 months. (Addendum to PSR 2, Dkt. No. 424; Dkt. Nos. 264, 265.)

## II. DISCUSSION

### A. First Step Act

As noted, Jones seeks relief under Section 404 of the First Step Act of 2018. 115 Pub. L. 391, § 404, 132 Stat. 5194 (enacted Dec. 21, 2018); *see also* 18 U.S.C. § 3582(c)(1)(B) (authorizing courts to modify a previously imposed sentence "to the extent otherwise expressly permitted by statute"). Section 404 allows—but does not require—district courts to reduce the sentence of certain defendants sentenced prior to August 3, 2010, the effective date of the Fair Sentencing Act of 2010. To be eligible, the defendant's offense must have been committed before August 3, 2010, and the statutory penalties applicable to the offense must have been modified by section 2 or 3 of the Fair Sentencing Act. First Step Act § 404(a).[2] Those sections

---

[2] There is an additional requirement focused on a defendant's prior efforts to receive relief, First Step Act § 404(c), but that is not at issue here.

3

of the Fair Sentencing Act "reduced the statutory penalties for cocaine base offenses" in order to "alleviate the severe sentencing disparity between crack and powder cocaine." *United States v. Peters*, 843 F.3d 572, 575 (4th Cir. 2016). If the court concludes that an offender is eligible, then the court may "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the [defendant's] offense was committed." First Step Act § 404(b).

**B. Jones Is Eligible for Relief Under the First Step Act.**

The parties' first disagreement concerns whether Jones meets the criteria to be eligible to be considered for a reduction under Section 404. It is undisputed that his offense was committed before August 3, 2010. Jones asserts that he also meets the second requirement, because the statutory penalties applicable to his offense were modified by section 2 of the Fair Sentencing Act, which increased the quantity of cocaine base required to trigger the statutory penalties set forth in 21 U.S.C. § 841(b)(1)(A) from 50 grams to 280 grams. The United States Probation Office agrees. (*See* Addendum to PSR 1, 3.)

Specifically, Jones was charged with 50 grams or more of cocaine base, but less than 280 grams. Thus, applying the Fair Sentencing Act to his case and using the amount charged in the indictment means he would no longer be subject to the statutory penalties of § 841(b)(1)(A), but would instead be subject to the penalties set forth in § 841(b)(1)(B). Under that provision, and with the § 851 notice, Jones's revised statutory sentencing range would be a term of imprisonment of ten years to life and at least eight years of supervised release.

The government disagrees with that analysis. It argues that, in determining which subsection of § 841(b)(1) would apply to Jones after the Fair Sentencing Act, the court should use the drug weight as found by the sentencing court, not the weight charged in the indictment. In this case, the government notes that the weight of 4.5 kilograms of cocaine base "is proven by

4

the stipulation of the defendant in his plea agreement and the uncontested finding in the PSR, adopted by the court at sentencing." (U.S. Resp. to Mot. Reduce Sent. 7, Dkt. No. 429.)[3] Using that amount would mean that Jones would still be subject to the statutory penalties in § 841(b)(1)(A) and ineligible for § 404 relief because his statutory penalties would not have been affected by the Fair Sentencing Act.

The problem with the government's argument is that it contravenes the rule set forth in *Alleyne v. United States*, 570 U.S. 99 (2013), which the government acknowledges applies in any sentencing occurring currently. The *Alleyne* Court, relying on *Apprendi v. United States*, 530 U.S. 466 (2000), held that any fact that increases the statutory mandatory minimum is an element of the crime that must be found by the jury beyond a reasonable doubt. 570 U.S. at 116. After *Apprendi* and *Alleyne*, then, a court's own factual findings at sentencing cannot be used to increase the statutory maximum or minimum penalties.

But the government notes that, at the time of Jones's sentencing and at the time the Fair Sentencing Act was enacted, *Alleyne* had not yet been decided. The government also correctly points out that neither *Alleyne* nor *Apprendi* applies retroactively on collateral review. From this, it argues that this court should effectively ignore those decisions when examining Jones's eligibility for relief under the First Step Act. Several other judges of this court have addressed and rejected this same reasoning. *See, e.g.*, *United States v. Slade*, No. 1:08CR00024-005, 2019 WL 3061200, at *3–4 (W.D. Va. July 12, 2019); *United States v. Smith*, 379 F. Supp. 3d 543, 546–47 (W.D. Va. 2019); *United States v. Stanback*, 377 F. Supp. 3d 618, 623 (W.D. Va. 2019). For several reasons, the court likewise rejects the government's proposed approach.

First of all, the non-retroactivity of *Alleyne* and *Apprendi* on collateral review is not

---

[3] Jones's plea agreement stipulated to the 4.5 kilograms *for purposes of sentencing* only, and that amount was not charged in the indictment.

5

dispositive here. As the *Slade* court explained, "determining whether new rules apply to sentence reductions under § 3582(c)(2) 'is analytically distinct from the question of retroactivity'" in the context of federal habeas. 2019 WL 3061200, at *3 (quoting *United States v. Fanfan*, 558 F.3d 105, 108 (1st Cir. 2009)). Instead, as the Supreme Court did in *United States v. Dillon*, 560 U.S. 817, 826 (2010), in addressing whether to apply a new rule retroactively in the context of a sentence reduction under § 3582(c)(2), the court looks to the text and scope of the statute authorizing the reduction. *Slade*, 2019 WL 3061200, at *3–4.

In the context here, the court must examine both 18 U.S.C. § 3582(c)(1)(B) and Section 404 to determine whether it is proper to apply *Alleyne*.[4] Section 3582(c)(1)(B) allows a court to "modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute." In looking to what is "expressly permitted" in Section 404 of the First Step Act, it is clear that the court may only reduce, not increase, a sentence. It is also clear that Congress's intent was to give defendants sentenced after the Fair Sentencing Act the benefit of the reduced statutory penalties in that act. This is evident from the instruction that any reduced sentence may be imposed "as if" the Fair Sentencing Act had been in effect at the time the offense was committed.

Critically, moreover, the Supreme Court's reasoning in *Dillon*, which concluded that the new rule in *United States v. Booker*, 543 U.S. 220 (2005), did not apply in implementing sentence reductions under § 3582(c)(2), actually *supports* applying *Alleyne* and *Apprendi* to First Step Act reductions. *See Slade*, 2019 WL 3061200, at *4. In *Dillon*, the court explained that the limited nature of a § 3582(c)(2) proceeding—which limits a court only to substituting the

---

[4] In its prior decisions addressing requests for reduced sentences under the First Step Act, the court has cited and implicitly recognized § 3582(c)(1)(B) as the appropriate vehicle for reducing a sentence under Section 404 of he First Step Act. To the extent it was not clear from its prior decisions, the court now explicitly concludes that its authority to do so is premised on 18 U.S.C. § 3582(c)(1)(B).

Sentencing Guidelines amendment that gave rise to the reduction proceeding—did not implicate the Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt. 560 U.S. at 828–29. This is because there was no concern that the district court's findings in a § 3582(c) proceeding could affect the statutory "prescribed range of punishment." *Id.* at 828. Instead, the only matters those findings could possibly affect were the "judge's exercise of discretion within that range." *Id.*

By contrast, what the United States asks the court to do—to ignore *Apprendi* and *Alleyne* and instead use the sentencing court's findings to set the prescribed statutory range—is clearly not limited to fact-finding affecting only the advisory guideline range. Indeed, the very nature of relief under Section 404 of the First Step Act directly relates to the *statutory* range for offenders. It therefore directly triggers a defendant's Sixth Amendment rights as set forth in *Apprendi* and *Alleyne*. Thus, unlike in *Dillon*, failing to apply that former precedent here could lead to Sixth Amendment violations, a clearly improper result. Indeed, there is nothing in the provision that suggests Congress "intend[ed] for courts to disregard the last six years of Supreme Court federal sentencing jurisprudence." *Smith*, 379 F. Supp. 3d at 546.

Accordingly, the court will assess Jones's eligibility only on the basis of the drug weights charged in the indictment. In doing so, it joins what appears to be a growing consensus of courts on the issue. *See Smith*, 379 F. Supp. 3d at 546–47 (collecting authority); *see also United States v. Valentine*, No. 1:99-cr-01-2, at *5 (W.D. Mich. July 2, 2019) (same). Based on the amount of drugs charged in the indictment, the statutory penalties for Jones's offense have changed, and he is eligible to be considered for a potential reduction.

**C. The First Step Act Does Not Entitle Jones to a Full Resentencing, and the Court Will Not Take Into Account Any Post-Sentencing Changes to His Career-Offender Status When Calculating His Guideline Range.**

The court turns next to Jones's argument that the court should find that he is no longer a career offender, in light of *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011), and adjust his guidelines accordingly.[5]

This issue also implicates whether the First Step Act authorizes a full resentencing, with a renewed calculation of every aspect of the guideline calculation, or only an adjustment of an otherwise final sentence. Although some courts have not needed to decide this issue, *e.g.*, *Smith*, 379 F. Supp. 3d at 548–49 & n.1, it could potentially make a difference in this case. If the court were to examine Jones's convictions and conclude, as he argues, that *Simmons* forecloses their use as predicate offenses for career offender status, then Jones's guideline range would be 151 to 188 months. If, on the other hand, the court concludes that it must recalculate the guidelines, but limit the recalculation only to numbers affected by application of the Fair Sentencing Act, then his guideline range remains the same as it was in 2011 when his sentence was reduced pursuant to Amendment 750: 262 to 327 months.

In analyzing this issue, the court again finds the reasoning in *Dillon* to be important. *Dillon* rejected the defendant's argument that, in a § 3582(c)(2) proceeding, the court should recalculate a defendant's sentence and, in doing so, should have adjusted his criminal-history

---

[5] Sitting en banc, the Fourth Circuit in *Simmons* addressed convictions under North Carolina's Structured Sentencing Act and their use in a subsequent federal sentencing. 649 F.3d 237. Under that Act, penalties were "strictly contingent on two factors:" the class of offense and the offender's prior record level, the latter of which was assigned based on prior convictions. *Id.* at 240. The court described the system as a "legislative mandate" rather than a guidelines system, because a judge had no authority whatsoever to impose a sentence exceeding the top of the range set forth in the Act. *Id.* at 244. Thus, whether an offender was subject to a sentence of more or less than twelve months could turn on a recidivist finding. If the finding had not been made a part of the record of conviction in state court, then the offender could not have received a felony sentence, and so, *Simmons* explained, the prior conviction could not be classified as a felony in a later federal proceeding. *Id.* at 244–45. In short, the court "held that for an offense to be a prior felony under North Carolina's Structured Sentencing Act as then written, a defendant must have actually faced the possibility of more than a year in prison." *United States v. Adams*, 814 F.3d 178, 181 (4th Cir. 2016) (citing *Simmons*, 649 F.3d at 244–45).

category, which he contended was erroneously inflated. 560 U.S. at 831. It noted that his argument misunderstood the scope of § 3582(c)(2) proceedings. The statute "does not authorize a resentencing," but only permits a sentence reduction within certain, "narrow bounds" constrained by the Sentencing Commission's policy statements, which include a statement that the court "shall leave all other guideline application decisions unaffected." *Id.* at 831.

Likewise, § 3582(c)(1)(B) is limited to a modification of sentence "*expressly permitted* by statute." The statute at issue, Section 404 of the First Step Act, allows a reduced sentence to be imposed "as if Sections 2 and 3 of the Fair Sentencing Act" had been effective at the time of defendant's sentencing, but does not otherwise expressly permit a reconsideration of any other aspect of a defendant's statutory penalties or guideline range. Likewise, it does not otherwise call into question the finality of the underlying criminal judgment, *see United States v. Sanders*, 247 F.3d 139, 142–43 (4th Cir. 2001), nor does it direct that a defendant be "resentenced." In short, § 3582(c)(1)(B) allows only what the First Step Act expressly allows, and the First Step Act does not expressly grant the authority to revisit all sentencing issues.

Furthermore, Federal Rule of Criminal Procedure 43(b)(4) explains that a defendant is not entitled to be personally present where the proceeding involves the correction or reduction of a sentence under Section 3582(c). *E.g.*, *United States v. Barber*, No. 0:09-207-04(CMC), 2019 WL 2526443, at *3 (D.S.C. June 19, 2019). This, too, undermines any assertion that to reduce a defendant's sentence under the First Step Act, a court must provide a full resentencing.

The court thus concludes, as have the clear majority of courts to have addressed the issue, that a plenary resentencing is not required. *E.g.*, *United States v. McKinney*, No. 06-20078-01-JWL, 2019 WL 2053998, at *2–4 (D. Kan. May 9, 2019) (holding same and collecting authority); *United States v. Cruz*, No. 1:95-CR-204, 2019 WL 3070562, at *4–5 (M.D. Pa. July

9

12, 2019) (collecting authority and concluding that "[t]his court concurs with the government and the numerous other courts . . . which have held that no plenary resentencing is required regarding a motion for reduction of sentence under § 404(b)").

Having reached that conclusion, the court sees no basis for the court to revisit the issue of Jones's career-offender status in determining his guideline range. Other courts have also declined to revisit this or similar issues. For example, in *United States v. Chambers*, No. 3:03-CR-00131-MR, 2019 WL 3072641, at *2 (W.D.N.C. July 12, 2019), the court rejected the argument that the court should disregard defendant's career-offender designation in light of *Simmons*. In doing so, the court reasoned that, "[b]y its plain terms, Section 404(b) does not contemplate that the Court would apply all other legal authority that would have impacted the Defendant's sentence had he been sentenced today." Thus, the court refused to "reconsider any sentencing determinations independent of those affected by the Fair Sentencing Act, including the Defendant's classification as a career offender." *Id.*; *Accord Barber*, 2019 WL 2526443, at *3 (concluding that defendant was not entitled to a full resentencing and so could not argue to the court that he no longer qualified as a career offender). Of course, in deciding whether to reduce Jones's sentence and to what extent, the court may consider any relevant § 3553(a) factors, which could include the fact that his convictions would no longer render him a career offender.

Although at first blush it might seem inconsistent to apply *Alleyne* and *Apprendi* in this instance, but not *Simmons*,[6] there is a critical distinction between the two. As discussed, what the government asks the court to do by ignoring *Alleyne* and *Apprendi* could allow a violation of

---

[6] The Fourth Circuit has held that *Simmons* is retroactively applicable on collateral review in limited circumstances not relevant here. Specifically, if a defendant is convicted of being a felon-in-possession, and the "felony" used to support that conviction is no longer a felony after *Simmons*, then *Simmons* can provide a basis for relief on collateral review. *Miller v. United States*, 735 F.3d 141, 147 (4th Cir. 2013).

10

Sixth Amendment rights because it could allow a sentencing judge's factual findings to directly affect a defendant's statutory penalty range. Application of *Simmons*, by contrast, does not affect Jones's statutory range, but potentially only his *advisory* guideline range. *Cf. United States v. Foote*, 784 F.3d 931 (4th Cir. 2015) (holding that "sentencing a defendant pursuant to advisory Guidelines based on a career offender status that is later invalidated" does not state a cognizable claim under 28 U.S.C. § 2255 motion where his sentence was not above the maximum authorized by law); *Lester v. Flournoy*, 909 F.3d 708 (4th Cir. 2018) (inmate's misclassification as a career offender was a fundamental defect that permitted him to seek habeas relief pursuant to § 2241 and the savings clause of § 2255 where the defendant was not sentenced under an advisory guideline system, but under the pre-*Booker* mandatory guidelines system). Thus, nothing about failing to apply *Simmons* in this context implicates Jones's Sixth Amendment rights. *Cf. Slade*, 2019 WL 3061200, at *4 (declining without discussion to re-examine defendant's career offender guideline range, but utilizing *Alleyne* and *Apprendi*).

The court turns next to a consideration of whether to reduce Jones's sentence. As noted in the Addendum (which also did not reconsider his career-offender status), Jones's guideline range of imprisonment remains unchanged from the time when he was last granted a reduction. His guideline sentencing range for a term of imprisonment is 262 to 327 months. (Addendum to PSR.)

### D. The Court Will Not Reduce Jones's Term of Imprisonment But Will Reduce His Term of Supervised Release.

Upon review of the record in this case, the court finds that a reduction of the term of imprisonment is not warranted in Jones's case. Jones moves for a reduction of his sentence from 172 to 100 months. (Mot. to Reduce Sentence 1, Dkt. No. 105.) At the time of the Addendum, Jones had served approximately 134 months. (Addendum 3.) At this point, about five additional

11

months have passed, and so he has served approximately 139 months. His projected release date is May 6, 2020.[7]

Although Jones's statutory range has been reduced, his guideline range has remained unchanged from 2011. Moreover, there are several overarching factors that convince the court that a further reduction is not warranted here. First of all, the amount of drugs involved in his offense was substantial: 4.5 kilograms of cocaine base. Jones stipulated to that agreed weight in his plea agreement. Moreover, as noted in the PSR, statements and information provided by his co-defendants could have led to him being responsible for at least 6.6 kilograms of cocaine base. (PSR ¶ 23.) The PSR also states that his statements of responsibility actually "underrepresent[ed] his involvement in the conspiracy and the amount of crack cocaine he was selling." (PSR ¶ 27.)

Second, although he did not receive a role enhancement at sentencing, he was clearly one of the two primary suppliers in this conspiracy. Indeed, the PSR noted that a role enhancement "may be appropriate," although it declined to give him one in accordance with his plea agreement. (PSR ¶ 23.)

Third, and perhaps most importantly, Jones has a significant criminal history that weighs heavily in favor of not reducing his term of imprisonment. He was a criminal-history category VI even without the career offender designation, and by a substantial margin. Specifically, he had 19 criminal history points, six more than needed to place him in category VI. His adult convictions began when he was 18 years old and included numerous drug offenses (both possession and distribution offenses), two separate convictions for resisting a public officer, a

---

[7] The Addendum states that Jones's projected release date is July 4, 2019. But the Bureau of Prisons currently sets forth the May 2020 date (https://www.bop.gov/inmateloc/) (last visited July 22, 2019), and it does not appear that the date had changed at any point after the date of the Addendum. The court has confirmed with the United States Probation Office that the date in the Addendum was simply an error.

conviction for eluding arrest with a moving vehicle, three convictions for driving while impaired, and a conviction for simple assault. (PSR ¶¶ 41–57.) He committed this offense less than two years following his release from custody. (*Id.* ¶ 55.) His history shows a lack of respect for the law, and a great need to deter future criminal activity and to protect the public.

Having considered the relevant § 3553(a) factors, then, the court believes that his current sentence of 172 months is appropriate, and it will not reduce that term of imprisonment.

However, the court finds that a reduction of Jones's term of supervised release is warranted. Specifically, the court believes that 8 years, the new mandatory minimum for his offense, would be a sufficient length of time for his supervised release, considering the need to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and avoid unwarranted sentence disparities among similar defendants. *See* 18 U.S.C. § 3583(c).

### III. CONCLUSION

For the foregoing reasons, the court will deny Jones's motion to reduce his term of imprisonment and grant his motion to reduce his term of supervised release. (Dkt. No. 421.) An appropriate order will be entered.

The clerk is directed to provide a copy of this memorandum opinion and the accompanying order to all counsel of record, the United States Probation Office, and the United States Marshals Service for delivery to the Bureau of Prisons.

Entered: August 9, 2019.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge